UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | |
|---|---|
| BRENDA LEWIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ACTING ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) | Civil Case No. <br> 2:15-cv-19-JMH <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*

This matter is before the Court upon cross-motions for summary judgment [DE 14 and 15] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits (DIB) and supplemental security income (SSI).[1] Plaintiff contends that the administrative law judge ("ALJ") erred in finding that she is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act. She seeks reversal of the ALJ's decision and an award of benefits. The Commissioner asserts that the ALJ's decision was proper and should be affirmed. The Court, having reviewed the record in this case and the motions filed by the parties, will grant the Commissioner's motion for summary judgment and deny Plaintiff's motion for summary judgment.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

I.

On March 16, 2012, Plaintiff applied for DIB and supplemental security income (SSI). [See Administrative Transcript, p. 17; hereafter "Tr."]. She alleged a disability beginning September 1, 2009. *Id*. Plaintiff's applications were denied initially and upon reconsideration. [Tr. p. 1-3.] On September 4, 2013, an administrative hearing was held before ALJ Gregory G. Kenyon in Cincinnati, Ohio. [Tr. pp. 17-27, 33-67]. Plaintiff appeared and testified, represented by attorney Curtis Hatfield. *Id*. Vocational Expert ("VE") William T. Cody also testified at the hearing. *Id*. In a decision dated November 20, 2013, ALJ Kenyon found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. [Tr. p. 27].

Plaintiff was forty-four years old on her alleged onset date, and forty-eight years old at the time of the ALJ's decision. [Tr. pp. 37, 89]. She has an eight-grade education and previously worked as a caregiver at a residential facility for adults with disabilities, a cashier, a machine operator at a bakery, and a server in a restaurant. [Tr. p. 248].

After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Plaintiff suffered from a combination of severe impairments, including: Meniere's disease, chronic hip pain, mild cervical degenerative disc disease, a history of migraine headaches, a bipolar disorder,

2

and a history of polysubstance abuse. [Tr. p. 19]. However, ALJ Kenyon concluded that none of these impairments were of listing level severity. [Tr. p. 20]. Notwithstanding these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform unskilled, simple, repetitive tasks; occasional contact with co-workers and supervisors; no public contact; no jobs which involve rapid production pace work or strict production quotas; and limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.[2]

[Tr. pp. 21-25]. Based on the testimony of VE Cody, the ALJ found that Plaintiff could not perform past relevant work. [Tr. p. 25]. But after considering her age, education, work experience, and RFC, ALJ Cody found that Plaintiff could perform other work in the national economy, such as packer, general factory worker, and cleaner and was not disabled. [Tr. pp. 26-27]. As a result, Plaintiff was denied a period of disability and DIB. [Tr. p. 27].

II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at

---

[2] Plaintiff only challenges the evaluation of her mental functional limitations, likewise, the Court will only address that portion of the ALJ's decision.

least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir.2006)(en banc)(quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her

4

past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir.1999)).

Pursuant to 42 U.S.C. § 405(g), judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007))(internal quotation marks omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)) (internal quotation marks omitted). In other words, as long as an administrative decision

5

is supported by "substantial evidence," this Court must affirm, regardless of whether there is evidence in the record to "support a different conclusion." *Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994))(internal quotation marks omitted). In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)(citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)).

III.

In her motion for summary judgment, Plaintiff argues that the ALJ erred by failing to accord proper weight to Plaintiff's treating provider and an examining psychologist and by failing to properly address the opinions of the non-examining sources upon which he relied when formulating his hypothetical question to the vocational expert. Plaintiff further argues that the ALJ's final decision is not supported by substantial evidence of record.

The Court will first address Plaintiff's challenge to the weight assigned to medical source statements in the record. Plaintiff argues that the ALJ erred by failing to give "controlling weight" to the opinions expressed by his treating physician, Dr. Jones, which she argues is corroborated by examining physician, Dr. Ganshirt. In response, Defendant argues that the ALJ reasonably evaluated the opinion evidence and discussed the

6

evidence supporting his decision on how he weighed the evidence. The Court has considered Plaintiff's argument, the United States' response to it in its Motion for Summary Judgment, and the administrative record in this matter, and concludes that the ALJ properly evaluated the opinions of Dr. Jones and Dr. Ganshirt.

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source is an acceptable medical source who has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* While the regulations require ALJs to evaluate every medical opinion in the record, the process for assigning weight to medical opinions in the records begins with the determination of whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c).

Controlling weight is assigned to the medical opinion of a treating source only when the opinion is both (1) well-supported by medically acceptable clinical and laboratory diagnostic

7

techniques and (2) not inconsistent with the other substantial evidence in the record. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (July 2, 1996); 20 C.F.R. § 404.1527(c)(2); *Bogle v. Sullivan,* 998 F.2d 342, 347-348 (6th Cir. 1993). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, *2 (July 2, 1996).

If controlling weight is not assigned to the opinion of the treating source, then the ALJ must balance the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. SSR 96-2p, 1996 WL 374188 (July 2, 1996); 20 C.F.R. § 404.1527(c)(2). In addition, the ALJ must give good reasons for not according the treating source opinion controlling weight. *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 545-546 (6th Cir. 2004).

Furthermore, if controlling weight is not assigned to the opinion of the treating source, the ALJ must also determine how much weight should be given to the opinions from non-treating

sources using the 20 C.F.R. § 404.1527(c)(2) factors. 20 C.F.R. §§ 404.1527(c) and (e)(ii).  Generally, the opinion of an examining physician or psychologist is entitled to less weight than that of a treating physician or psychologist, and the opinion of a non-examining State agency physician or psychologist is generally entitled to the least weight of all. 20 C.F.R. §§ 404.1527; SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996).  In keeping with these general concepts, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996).

The Court will first address the weight given to opinion of treating physician, Dr. Jones.  Dr. Jones's August 2013 assessment states that he evaluated Plaintiff on July 23, 2007 with follow-up "med visits" until March 23, 2011 at which time Plaintiff's care continued with Melanie Walters, APRN.  [Ex. B16F, p. 1330]. In his assessment, Dr. Jones found that Plaintiff had poor to no ability to deal with the public; deal with work stresses; maintain attention and concentration; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and demonstrate reliability.  Dr. Jones found that Plaintiff was otherwise limited but not precluded in all other areas, including her ability to follow work orders; relate to co-workers; use judgment; interact with supervisor(s); function independently;

9

understand, remember, and carry out simple job instructions; maintain personal appearance; and relate predictably in social situations. Dr. Jones opined that Plaintiff had anxious and panic symptoms which cause significant difficulty in complex social interactions consisting of Plaintiff becoming agitated when dealing with others. Dr. Jones further opined that Plaintiff's symptoms of bipolar mood swings make predictability, consistency, and concentration very difficult, which coupled with her depressive symptoms, will lead to absences from work duties and socially inappropriate behavior.

Having reviewed the record, the Court finds that the ALJ properly discounted the weight given to the opinion of Dr. Jones because the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); 20 C.F.R. § 404.1527(c)(2). Dr. Jones, himself, failed to cite any objective findings in support of his mental impairment opinion. Plaintiff has also failed to identify any treatment notes or records that support Dr. Jones's opinion or any reason why Dr. Jones's opinion is entitled to more weight other than the fact that he was a treating physician. Perhaps this is so because, as Dr. Jones briefly notes, he has not evaluated Plaintiff since July of 2007.

10

In addition, the Court finds that the ALJ did not err by discounting the weight given to the opinion of Dr. Jones because his opinion is inconsistent with other substantial evidence in the record. The records from Northkey Community Care, the facility where Plaintiff received treatment for many years, show that while Plaintiff has depressive symptoms, Plaintiff consistently demonstrated cooperative behavior and organized, goal-directed thought processes at her appointments and evaluations. [Tr. pp. 1259-1325]. Plaintiff consistently denied having suicidal thoughts during her treatment at Northkey and her providers consistently found there were no significant risk factors for suicide. *Id.* Plaintiff also denied mood swings, hallucinations, memory problems or confusion and was assessed to be stable overall. *Id.* Plaintiff's GAF score in April of 2013 indicated moderate symptoms. [Tr. p. 1265]. The Northkey records also indicate that Plaintiff had been looking for work intermittently, had visited with her mother, and was involved in her grandchildren's lives. [Tr. p. 1299]. This evidence undermines the portions of Dr. Jones's opinion that Plaintiff is unreliable and had no ability to concentrate or behave in an emotionally stable manner. The Regulations require the ALJ to look to the record as a whole, not just to medical opinions, to decide whether substantial evidence is inconsistent with a treating physician's assessment. *See* 20 C.F.R. § 404.1527(d)(2), (4). Under this standard, the ALJ could

11

properly find that Dr. Jones's opinion was not entitled to controlling weight.

Finally, the Court notes that any argument by Plaintiff that the ALJ erred by not giving good reasons for disregarding Dr. Jones's opinion also must fail. The ALJ adequately explains that Dr. Jones overestimates the degree of difficulty that claimant would have with reliability, which implies that the opinion is inconsistent with the other substantial evidence in the record. As discussed previously, the Court finds that Dr. Jones's opinion is inconsistent with the other substantial evidence in the record. Moreover, Plaintiff's impairment of anxiety caused by complex social situations is fully accounted for in the RFC finding, which provides for occasional social contact with co-workers and supervisors and no public contact.

Turning to examining, non-treating physician, Dr. Ganshirt, the Court also finds that the ALJ reasonably decided that this opinion should be given little weight. Most importantly, the ALJ noted that Dr. Ganshirt's evaluation was inconsistent with the records from Northkey, which show moderate level symptoms of anxiety, and that the GAF score of 50 is inconsistent with the GAF score assigned at Northkey. [Tr. p. 25]. The ALJ further explained that, regardless, a GAF of 50 is only one point below what is considered moderate symptomatology and is not consistent with someone who is assessed as unable to interact appropriately

12

with her peers or co-workers, unable to deal with minimal levels of stress or perform basic tasks on a consistent basis. The Court also notes that Dr. Ganshirt's opinion was based on a single examination. For these reasons, the ALJ was entitled to discount the weight given to Dr. Ganshirt's opinion. *See* 20 C.F.R. § 404.1527(c)(1),(3)-(6).

The Court will now address Plaintiff's argument that the ALJ accorded undue weight to the opinions of non-examining State agency physicians, Dr. Mendelson and Dr. Freudenberger, whose opinions were accorded "some weight" by the ALJ. The weight the ALJ gives to a consultative or State agency reviewing medical opinion depends on a variety of factors, including whether the source actually treated the claimant, the supportability of the source's opinion, consistency of the opinion compared with the record as a whole, and other factors. 20 C.F.R. § 404.1527(c). The opinions of non-examining State agencies' medical and psychological advisers can be given weight only to the extent they are supported by the evidence in the record. 20 C.F.R. § 404.1527(f); SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also Atterbery v. Secretary of Health and Human Services,* 871 F.2d 567, 570 (6th Cir.1989) (opinions of non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the ALJ's findings). Notably, under certain circumstances, the opinions of non-examining State agency medical

or psychological consultants may be given greater weight than the opinions of treating or examining sources. SSR 96–6p, 1996 WL 374180, *3 (July 2, 1996). Social Security Regulation 20 CFR 404.1527 provides that "state agency psychologists are highly qualified psychologists who are also experts in Social Security disability evaluation."

The Court is persuaded that the Court properly accorded the opinions of Doctors Mendelson and Freudenberger "some weight." Both doctors reference the treatment notes and reports of Plaintiff in their opinion and determine that Plaintiff had mild deficits in cognitive functions, moderate deficits in concentration, persistence, and pace, and moderate deficits in social capacity. [Tr. pp. 96-97, 100-02, 112-13, 116-18]. Dr. Mendelson opined, and Dr. Freudenberger agreed, that Plaintiff's impairments are not disabling and that she can perform most simple, unskilled, repetitive assignments with little social interactions and firm supervision with clear expectations. [Tr. pp. 101-02, 116-18]. Both doctors ultimately concluded that while Plaintiff may have a mental impairment, it is not of a disabling proportion, hence, Plaintiff can perform limited work. [Tr. pp. 101-02; 116-18]. The ALJ recognized that the limitations identified in the residential functional capacity fully accommodate those limitations. In sum, the Court finds that the State Agency psychologists have produced a credible assessment of the

14

claimant's mental impairment and is persuaded to accept the ALJ's determination to give the opinions "some weight" because the opinions are consistent with the evidence as a whole.

Plaintiff's final argument is that the ALJ erred by failing to properly address the opinions of the non-examining sources upon which he relied when formulating his hypothetical question to the vocational expert. Specifically, Plaintiff argues that because the non-examining opinions of Doctors Mendelson and Freudenberger state that Plaintiff would benefit from an environment with firm supervision that de-emphasizes social interactions, the ALJ erred by failing to include these additional limitations in his hypothetical question. In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1002-03 (6th Cir. 1988).

In determining what question to ask, the ALJ took into account each of Plaintiff's severe impairments when he determined Plaintiff's residual functional capacity. Specifically, the ALJ determined that Plaintiff could perform light work with certain physical limitations and the following mental limitations:

15

unskilled, simple, repetitive tasks; occasional contact with co-workers and supervisors; no public contact; no jobs which involve rapid production pace work or strict production quotas; static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next. [Tr. pp. 21-25]. Similarly, the ALJ took into account these impairments when posing the hypothetical question to the VE, which stated as follows:

> [A]ssume the existence of a hypothetical individual of the claimant's age, education, and prior work experience who […] is limited to performing unskilled, simple, repetitive tasks; limited to occasional contact with coworkers and supervisors; no public contact; no jobs involving rapid production-paced work, or strict production quotas; and limited to performing jobs in a relatively static work environment, which there is very little, if any change in the job duties, or the work routine from one day to the next.

[Tr. pp. 60-61]. Consequently, ALJ Kenyon's hypothetical accurately incorporated the limitations that he found to be credible. Further, a hypothetical question may be incomplete, yet still accurately portray a claimant's limitations. *See, e.g., Infantado v. Astrue,* 263 Fed.Appx. 469, 477 (6th Cir. 2008). Such is the case here. While the hypothetical question could have contained more restrictions, it contained an accurate portrayal of Plaintiff's mental limitations. Having reviewed the ALJ's determinations as to Plaintiff's functional limitations and

16

finding them to be sound, the Court finds no error in the hypothetical posed to the VE.

In conclusion, after reviewing the record, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence, therefore, this court must affirm.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 14] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 15] is **GRANTED**;

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 3rd day of February, 2016.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge